## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

WINDELS MARX LANE & MITTENDORF, LLP
Rodman E. Honecker
rhonecker@windelsmarx.com
120 Albany Street Plaza
New Brunswick, New Jersey 08901

TUCKER ELLIS LLP
Steven E. Lauridsen (*pro hac vice* pending)
Steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles CA 99071-2223
T:  (213) 430-3400
F: (213) 430-3409

Attorneys for Plaintiffs

| | |
|---|---|
| SPECTRUM BRANDS, INC., | x |
| Plaintiff, | Civil Action: |
| v. | |
| ARROW MERCHANTS LLC DBA BHNV GROUP and JOHN DOES 1-10, | |
| Defendants. | x |

## COMPLAINT AND JURY DEMAND

For its Complaint against Defendants Arrow Merchants LLC dba BHNV Group ("BHNV") and Does 1-10 (the "Doe Defendants") (collectively, "Defendants"), Plaintiff Spectrum Brands, Inc. ("Plaintiff" or "Spectrum"), by and through its attorneys Tucker Ellis LLP, states as follows:

## NATURE OF THE ACTION

1.     E-commerce retail sales have exploded over the past decade. Because of the anonymity that the internet gives online retailers, trademark owners face unprecedented challenges

{41010170:1}

to protect both their reputation among consumers and the goodwill of their brands when unauthorized third parties sell their goods. And in the highly-competitive home improvement market, quality, reliability, and customer service are fundamental to consumers' choice in products. A central challenge to trademark owners' reputation and goodwill comes from unscrupulous sellers who acquire goods through theft or other unauthorized channels and resell them through online platforms, such as Amazon.com, without warranties, customer support, or quality controls. These sales result in consumer confusion and damage to trademark owners.

2.      Defendants are engaged in just such an operation: they acquire products bearing Spectrum's trademarks through improper and unauthorized means and resell them without the warranties, customer support, or quality controls. Defendants' practices have resulted in damage to Spectrum's marks and goodwill. In particular, Defendants have been selling, without authorization, products under the KWIKSET® trademarks, which are known to consumers as top-quality products developed and sold by Spectrum via its Hardware & Home Improvement division.

3.      Spectrum brings this action to combat this problem and protect its reputation and goodwill. In particular, Spectrum seeks damages and injunctive relief for infringement of a registered trademark, false designation of origin, and unfair competition pursuant to 15 U.S.C. §§ 1114, 1125; as well as unfair competition in violation of the common law of the State of New Jersey.

## THE PARTIES

4.      Plaintiff Spectrum is a Delaware corporation with its principal place of business located in Middleton, Wisconsin.

5.      On information and belief, Defendant BHNV is a New Jersey corporation with its

principal place of business in Deal, New Jersey. BHNV operates a storefront on Amazon.com that is associated with Merchant ID ATVPDKIKX0DER. Previously, BHNV referred to this storefront on Amazon as "BHNV Group" ("BHNV's Storefront"). BHNV does business throughout the United States, including New Jersey through BHNV's Storefront.

6.     Spectrum is not aware of the true names and capacities of Defendants named in this Complaint as Does 1-10, inclusive, and therefore brings this action against these Defendants by such fictitious names. Spectrum will amend this Complaint to allege these Defendants' true names and capacities when ascertained.

7.     At all times material to this action, each of the Defendants was the agent, servant, employee, partner, alter ego, subsidiary, or joint venturer of each of the other Defendants, and the acts of each of the Defendants were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Defendants acted with the knowledge, permission, and the consent of each of the other Defendants; and, each of the Defendants aided and abetted the other Defendants in the acts or omissions alleged in this Complaint.

## JURISDICTION AND VENUE

8.     This case is a civil action arising under the Trademark Laws of the United States, 15 U.S.C. §§ 1051, *et seq.* and New Jersey Statutory and Common Law.

9.     This Court has subject matter jurisdiction over the claims in this Complaint, which arise under the Trademark Laws of the United States, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), and which involve a federal question, pursuant to 28 U.S.C. § 1331.

10.     This Court has pendent jurisdiction over the claims arising under New Jersey state law pursuant to 28 U.S.C. § 1367(a) because the asserted state claims are substantially related to the claims arising under the Trademark Laws of the United States. Furthermore, this Court has

pendent jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

11.    The Court has personal jurisdiction over Defendants because Defendants reside in New Jersey and because Defendants are conducting and soliciting business in New Jersey, and have substantial contacts within this district.

12.    Venue is proper under 28 U.S.C. § 1391 because Defendants reside in this district, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, or a substantial part of the property that is the subject of this action is situated in this judicial district.

## SPECTRUM'S BUSINESS AND ITS TRADEMARKS

13.    Spectrum is a global consumer goods conglomerate. Among other products, Spectrum, develops, manufactures, distributes, and sells high-quality residential home hardware and locksets under the KWIKSET trademarks (the "Spectrum Products").

14.    Spectrum Products are sold exclusively through its network of authorized wholesalers, authorized security dealers, authorized retailers, and authorized resellers ("Authorized Sellers").

15.    Genuine Spectrum Products sold through this exclusive network are sold with manufacturers' warranties, a high level of customer service, and other quality controls, all of which allow Spectrum to protect its brand by managing the consumer's experience with Spectrum Products sold through Authorized Sellers.

16.    Spectrum further advertises to its customers that its KWIKSET-branded products constitute the leading residential lock, making homeowners feel safe since 1946. The KWIKSET

interior and exterior door products provide customers with the quality, technology, durability and style they want while providing security.

17.     Similarly, Spectrum owns the exclusive trademark rights to the distinctive KWIKSET trademark, with the mark having been used in connection with door locks and related goods since at least as early as 1946 (the "Spectrum Marks").

18.     The Spectrum Marks are a symbol of outstanding quality and endurance known to customers worldwide.

19.     The Spectrum Marks are unique and distinctive and, as such, designate a single source of origin.

20.     Based on Spectrum's use, including the use described in this Complaint, Spectrum owns extensive common law trademark rights in the Spectrum Marks.

21.     In addition to its extensive common law rights, Spectrum owns United States registrations for the Spectrum Marks. Specifically, Spectrum owns:

      a.      United States Registration No. 535,340 for KWIKSET;

      b.      United States Registration No. 518,394 for KWIKSET;

      c.      United States Registration No. 1,357,600 for KWIKSET; and

      d.      United States Registration No. 4,596,770 for KWIKSET.

All of these registrations are incontestable under 15 U.S.C. § 1056. The registration certificates for each of these registrations are attached as Exhibit 1.

22.     Spectrum devotes a significant amount of time, energy, and resources toward protecting the value of the Spectrum Products, Spectrum Marks, and the goodwill generated by these products and marks. By distributing Spectrum Products exclusively through its Authorized Sellers, Spectrum is able to manage the consumers' experience with Spectrum Products and

maintain the goodwill of the Spectrum Marks.

23.    As a result of Spectrum's efforts and use, the Spectrum Marks have come to be recognized by the public and members of the trade as being associated exclusively with a single source of origin.

24.    Having been promoted widely to the general public, and having been identified exclusively with a single source of origin, the Spectrum Marks symbolize the tremendous goodwill associated with Spectrum and its products.

## SPECTRUM'S QUALITY CONTROL MEASURES

25.    To protect its brand and its consumers, Spectrum has implemented a quality control program that applies to all of its Authorized Sellers.

26.    The goal of this program is to ensure that consumers who purchase Spectrum Products receive products that feature all of the special characteristics that consumers expect from products sold under the Spectrum Marks. Spectrum is especially concerned with providing quality and reliability.

27.    The program seeks to minimize the likelihood that materially different products reach consumers and thus seeks to protect consumers from confusion and to protect the goodwill associated with the Spectrum Marks.

28.    Spectrum permits Authorized Sellers to sell Spectrum Products through specific channels only and requires them to abide by applicable authorized seller policies and agreements relating to quality controls, customer service, and other sales practices (collectively, the "Spectrum Rules").

29.    The Spectrum Rules:

    a.    limit to whom and where Authorized Sellers may sell Spectrum Products.

To prevent third parties from acquiring and reselling Spectrum Products, Authorized Sellers are specifically prohibited from selling products to unauthorized resellers;

b.    require that Authorized Sellers inspect all Spectrum Products for damage, defects, evidence of tampering, or other non-conformances, and to remove all such products from inventory;

c.    require that Authorized Sellers store products in accordance with guidelines issued by Spectrum;

d.    prohibit Authorized Sellers from relabeling, repackaging, or otherwise altering Spectrum Products;

e.    require that Authorized Sellers assist with recalls and other consumer safety information;

f.    require that Authorized Sellers provide certain services to their customers; and

g.    require Authorized Sellers to become familiar with the features of all Spectrum Products kept in their inventory, which ensures that Authorized Sellers are uniquely qualified to recommend the Spectrum Products best suited for end-user consumers' needs.

30.    Following the sale of Spectrum Products, Authorized Sellers supply ongoing support to end-user consumers and are required to provide high-level customer service by promptly responding to consumer inquiries.

## SPECTRUM'S STRICT QUALITY CONTROL FOR ONLINE SALES

31.    Because of the risk associated with materially different products being sold by unauthorized sellers in online marketplaces and consumers' inability to inspect such products in person, Spectrum imposes additional requirements on its Authorized Sellers who sell online.

32. Spectrum vets and approves authorized online sellers ("Authorized Online Sellers") to ensure that they meet Spectrum's strict criteria and will properly represent the Spectrum Products in the online marketplace.

33. Authorized Online Sellers may only sell Spectrum Products on websites that Spectrum has specifically approved, allowing Spectrum to have oversight over Authorized Online Sellers.

34. Knowing where its products are sold is critical to Spectrum's ability to exercise its quality controls because such knowledge allows Spectrum to verify its Authorized Online Sellers and promptly address any quality issues or negative reviews that arise.

35. For this reason, Authorized Online Sellers are prohibited from selling anonymously and must clearly state their business name and current contact information on all websites where they sell.

36. Authorized Online Sellers are also prohibited from selling, without prior written consent of Spectrum, Spectrum Products on unauthorized websites, such as third-party marketplaces like Amazon, eBay, Jet, Rakuten, Walmart Marketplace, Sears Marketplace, and Craigslist.

37. In cases of consumer complaints, these procedures allow Spectrum to identify and contact the Authorized Online Seller that made the sale and ensure the complaint is addressed immediately.

38. As material terms of their contractual relationship with Spectrum, Authorized Online Sellers must:

    a. be appropriately registered and recognized businesses that meet applicable criteria (*e.g.*, credit, sales history, and facility requirements);

b.      have an acceptable online review history without significant negative product or seller reviews;

c.      possess an acceptable business operating record, which includes Spectrum having evaluated, among other things, any lawsuits, complaints, or actions related to the delivery of goods;

d.      implement a mechanism for soliciting customer feedback/reviews and taking appropriate steps to promptly address that feedback; and

e.      cooperate with Spectrum in investigating any negative product reviews and respond to such reviews.

39.    Spectrum regularly monitors Authorized Online Sellers and online product and seller reviews, conducts test purchases and inspections, and confirms its Authorized Online Sellers' compliance with all of its quality control and Authorized Online Seller requirements, including the Spectrum Rules.

40.    Spectrum has the right to terminate its relationship with any Authorized Online Seller that fails to comply with Spectrum's quality control requirements.

## DEFENDANTS' UNLAWFUL ACTIVITIES

41.    In the course of monitoring online listings of Spectrum Products, Spectrum discovered a high volume of products bearing the Spectrum Marks being illegally offered for sale by Defendants on Amazon through BHNV's Storefront. A screenshot of the Amazon listing for BHNV's Storefront appears below:



42.     Because Defendants are neither Authorized Sellers nor Authorized Online Sellers of Spectrum Products, they are not subject to—and do not comply with—the Spectrum Rules.

43.     Defendants are therefore selling materially different products in association with the Spectrum Marks, without warranties or other consumer protections that are hallmarks of Spectrum Products sold through Spectrum's authorized network.

44.     The unauthorized sales of these materially different products is harmful to consumers of Spectrum Products and to Spectrum's goodwill.

45.     Customer reviews of BHNV's Storefront show that Defendants have sold products through the BHNV's Storefront that were used, broken, defective, or otherwise of poor quality.

⭐☆☆☆☆    *"broken & crushed product - DO NOT BUY"*
By CMS on August 13, 2021.

46.     This review is only a sample of the negative reviews that customers have written about BHNV's Storefront.

47.     These negative reviews indicate that BHNV's Storefront is an operation that lacks effective controls and customer service, and that does not meet the standards established by the Spectrum Rules.

48.     Despite these negative reviews, Defendants have sold, and continue to sell, unauthorized products bearing the Spectrum Marks on BHNV's Storefront.

49.     For example, without limitation, Defendants currently are selling through BHNV's Storefront unauthorized Kwikset 99070-101 Powerbolt 2 Door Lock Single Cylinder Electronic Keyless Entry Deadbolt Featuring SmartKey Security in Satin Nickel:



50.     Not surprisingly, as with the other unauthorized products sold by Defendants, customers have complained about quality:



Ann

⭐☆☆☆☆  **Delivered a defective product**
Reviewed in the United States on November 16, 2019
Style: lock  |  **Verified Purchase**

Delivered late and the plastic part on the electrical connection is torn to bits so I can't connect them. Because of the late delivery Kwikset won't be available to even discuss the issue until Monday. Disappointed is an understatement. I bought this to replace a cheap Kwikset lock put in the builder put in and lasted only a year. I thought this was an upgrade an apparently I was wrong. Should've used a different product. Won't purchase qwikset again, customer service wasn't helpful at all. Thankfully amazon will replace it because of the defect without me having to uninstall the lock to take photos of my issue before being sent a replacement part.

51.    Such sales have harmed and, if not enjoined, will continue to harm, Spectrum's goodwill and confuse consumers as to the source of the goods.

52.    In addition to the reasons stated above, Defendants' operation also does not comport with Spectrum's quality control requirements because they:

    a.    have not disclosed to Spectrum where they acquire products that bear the Spectrum Marks, preventing Spectrum from determining if any products Defendants are selling or have sold are stolen, counterfeit, or subject to recall;

    b.    upon information and belief, do not inspect the products they sell for damage, defects, broken seals, evidence of tampering, and other non-conformance and remove all such products from inventory and instead sell such products bearing the Spectrum Marks;

    c.    upon information and belief, do not store their products in a manner consistent with the storage guidelines specified by Spectrum;

    d.    store their products at Amazon warehouses and, upon information and belief, allow their inventory stored at Amazon's warehouses, which allows the products to be commingled with other sellers' inventory, resulting in their products being commingled with fake, knockoff, and tampered-with products from other sellers, ultimately resulting in consumers receiving fake, knockoff, and tampered-with products from BHNV's Storefront;

    e.    upon information and belief, sell products as "new" that have been opened or repackaged; and

    f.    upon information and belief, do not package and ship their products in a manner consistent with the Spectrum Rules but instead package and ship products in a manner that allows them to become damaged.

53.    Defendants also do not comport with Spectrum's customer service requirements because they:

a.  are not qualified or trained to accurately describe, demonstrate, and sell the products in their inventory and to advise customers on how to use Spectrum Products safely and properly;

b.  do not—and are unable to—provide the advice to consumers that Spectrum requires of its Authorized Sellers and do not provide the type of ongoing support and response to consumer inquiries that Spectrum requires of its Authorized Sellers; and

c.  do not take appropriate steps to address negative reviews from customers and do not cooperate with Spectrum in investigating negative product reviews.

54.     For all of the reasons set forth above, the products Defendants sell bearing the Spectrum Marks fail to adhere to the Spectrum Rules designed to protect consumers and Spectrum's goodwill.

55.     As a result, the goods sold by Defendants are sold without warranties and without the benefits of customer service, making them materially different.  These goods therefore are not—and cannot be—genuine Spectrum Products, rendering the sale of these goods unlawful.

56.     Upon information and belief, BHNV acquired, whether through lawful or unlawful means, at least some Spectrum Products from Spectrum Authorized Sellers for the purpose of reselling them without authorization.

57.     Upon information and belief, BHNV conceals from Authorized Sellers the fact that it intends to resell the Spectrum Products it acquires from Authorized Sellers.

**DEFENDANTS' REFUSAL TO STOP THEIR UNAUTHORIZED SALES**

58.     On or about February 2, 2019, counsel for Spectrum sent a cease-and-desist letter

demanding that BHNV immediately cease selling products bearing the Spectrum Marks and notified BHNV that it was causing harm to Spectrum's customers, Spectrum, and Spectrum's goodwill.

59.    Spectrum did not receive a response to this letter, and Defendants continued to offer for sale infringing products bearing the Spectrum Marks on BHNV's Storefront.

60.    On or about March 1, 2021, counsel for Spectrum sent a second cease-and-desist letter to BHNV addressing the same concerns.

61.    Spectrum again did not receive a response, and Defendants continued to offer for sale infringing products on BHNV's Storefront. Spectrum sent follow-up letters on March 15, 2021 and March 31, 2021.

62.    Defendants have not ceased their unlawful conduct as of the filing of this Complaint.

63.    Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

64.    Defendants have demonstrated an intent to harm Spectrum though their willful infringement of the Spectrum Marks, continued pattern of misconduct, and by ignoring demands from Spectrum that they cease their unlawful activity.

### HARM TO SPECTRUM AND TO THE GENERAL PUBLIC

65.    Defendants' unauthorized sale of products bearing the Spectrum Marks creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' products, and is likely to falsely suggest a sponsorship, connection, license, or association with Spectrum.

66.    Defendants' unauthorized sale of products bearing the Spectrum Marks infringes

on the Spectrum Marks and diminishes their value.

67.    By continuing to sell products bearing the Spectrum Marks, without warranties and without the benefits of customer service, Defendants have interfered with Spectrum's ability to exercise quality control over products being sold bearing the Spectrum Marks.

68.    Defendants have also misled, and continue to mislead, consumers into believing they are purchasing genuine Spectrum Products with all of the warranties and benefits that accompany Spectrum Products sold by Authorized Sellers when they are not, and Defendants' actions thus infringe on the Spectrum Marks.

69.    As set forth above, the unauthorized sale of products bearing the Spectrum Marks through unauthorized sellers such as Defendants has caused significant harm to Spectrum because consumers blame Spectrum when they receive materially different products sold under the Spectrum Mark without a warranty and without the benefit of customer service, or when they receive from unauthorized sellers such as Defendants, products that are damaged, used, or missing parts, just to name a few examples.

70.    Spectrum has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property and appurtenant goodwill, and damage to its existing and potential business relations.

71.    Spectrum has suffered, and will continue to suffer irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity, entitling Spectrum to injunctive relief.

72.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an inherent interest in being free from confusion, mistake, and deception.

## FIRST CAUSE OF ACTION
### (Trademark Infringement Under 15 U.S.C. § 1114(1))

73.     Spectrum realleges and incorporates by reference each of the allegations contained in the proceeding paragraphs as though fully set forth here.

74.     Defendants' use in commerce of the Spectrum Marks is likely to cause confusion or mistake or to deceive.

75.     The above-described acts of Defendants constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Spectrum to relief.

76.     Defendants have unfairly profited from the trademark infringement alleged.

77.     By reason of Defendants' acts of trademark infringement, Spectrum has suffered damage to the goodwill associated with the Spectrum Marks.

78.     Defendants' acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Spectrum and its federally registered trademarks.

79.     Defendants' acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

80.     By reason of Defendants' acts, Spectrum's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Spectrum is entitled to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

81.     By reason of Defendants' willful acts of trademark infringement, Spectrum is entitled to damages, and those damages should be trebled under 15 U.S.C. § 1117.

82.     This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
### (Trademark Infringement and False Designation of Origin
### Under 15 U.S.C. § 1125(a))

83.     Spectrum realleges and incorporates by reference each of the allegations contained in the proceeding paragraphs as though fully set forth here.

84.     Defendants' use in commerce of the Spectrum Marks is likely to cause confusion or mistake or to deceive the relevant public that Defendants' goods are authorized, sponsored, approved by, or affiliated with Spectrum.

85.     The above-described acts of Defendants constitute trademark infringement of the Spectrum Marks as well as false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Spectrum to relief.

86.     Defendants have unfairly profited from the activity alleged.

87.     By reason of the above-described acts of Defendants, Spectrum has suffered damage to the goodwill associated with the Spectrum Marks.

88.     The above-described acts of Defendants have irreparably harmed and, if not enjoined, will continue to irreparably harm Spectrum and the Spectrum Marks.

89.     The above-described acts of Defendants have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

90.     By reason of Defendants' acts, Spectrum's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Spectrum is entitled to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

91.     Because the above-described acts of Defendants were willful, Spectrum is entitled

to damages, and those damages should be trebled under 15 U.S.C. § 1117.

92.     This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION
**(New Jersey Unfair Competition; N.J.S.A. 56:4-1, et seq.))**

93.     Spectrum realleges and incorporates by reference each of the allegations contained in the proceeding paragraphs as though fully set forth here.

94.     Spectrum is informed and believes that Defendants are in direct competition with Spectrum.

95.     Defendants' willful, knowing and unauthorized promotion, advertisement, sale and offering for sale of infringing goods causing confusion as to the source of the goods and causing harm to Spectrum's goodwill is an unlawful appropriation of Spectrum's exclusive rights in the Spectrum Marks and variations thereof.

96.     Such acts constitute deceptive trade practices and unfair competition in the conduct of trade and commerce in violation of state law, including New Jersey Statute § 56:4-1, et seq.

97.     Defendants' actions have proximately caused Spectrum damage, and Spectrum is entitled to compensatory damages under the law.

98.     Due to Defendants' conduct, Spectrum has suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of actual damages that would afford Spectrum adequate relief at law for Defendants' acts and continuing acts. Spectrum's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened by Defendants. Accordingly, Spectrum is entitled to preliminary and permanent injunctive relief.

99.     Defendants' conduct has been intentional and willful and in conscious disregard of Spectrum's rights and, therefore, Spectrum is entitled to damages, and those damages should be

trebled under the law of the State of New Jersey.

## FOURTH CAUSE OF ACTION
### (New Jersey Trademark Infringement; N.J.S.A. 56:3-13.16)

100.    Spectrum realleges and incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth here.

101.    The foregoing acts of Defendant violate New Jersey Statute §56:3- 13.16 because they constitute use in commerce of Plaintiffs' marks in connection with the sale, offering for sale, distribution, and advertising of goods and services in a manner likely to cause confusion, mistake, and deception as to the source or origin of the goods.

102.    Defendants' conduct has been intentional and willful and in conscious disregard of Spectrum's rights and, therefore, Spectrum is entitled to damages.

## FIFTH CAUSE OF ACTION
### (Common Law Trademark and Unfair Competition)

103.    Spectrum realleges and incorporates by reference each of the allegations contained in the proceeding paragraphs as though fully set forth here.

104.    Defendants' by their acts alleged above, have willfully, knowingly, and intentionally engaged in acts constituting unfair competition and trademark infringement under the common law of the State of New Jersey.

105.    Upon information and belief, Defendants are improperly trading on the reputation and goodwill of Plaintiff and its association with the Spectrum Marks.

106.    Due to Defendants' conduct, Spectrum has suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of actual damages that would afford Spectrum adequate relief at law for Defendants' acts and continuing acts. Spectrum's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened by

Defendants. Accordingly, Spectrum is entitled to preliminary and permanent injunctive relief.

107.    Defendants' conduct has been intentional and willful and in conscious disregard of Spectrum's rights and, therefore Spectrum is entitled to damages.

## REQUEST FOR RELIEF

WHEREFORE, Spectrum requests judgment against Defendants as follows:

1.    That the Court enter a judgment against Defendants that Defendants have:

    a.    Infringed the rights of Spectrum in the Spectrum Marks that have been federally registered, all in violation of 15 U.S.C. § 1114(1);

    b.    Infringed the rights of Spectrum in the Spectrum Marks in violation of 15 U.S.C. § 1125(a); and

    c.    Engaged in trademark infringement, unfair competition, and deceptive acts and practices in violation of N.J.S.A. 56:4-1, et seq., N.J.S.A. 56:3-13.16, and common law.

2.    That each of the above acts was willful.

3.    That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:

    a.    Engaging in any infringing activity including advertising, promoting, marketing, franchising, selling, and offering for sale any goods or services in connection with the Spectrum Marks or any similar mark;

    b.    Engaging in any activity that lessens the distinctiveness of the Spectrum Marks;

{41010170:1}    20

    c.   Engaging in unfair competition with Spectrum; and

    d.   Engaging in deceptive acts.

4.     That Spectrum be awarded damages for Defendants' acts of trademark infringement and unfair competition and that those damages be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

5.     That Spectrum be awarded all profits resulting from Defendants' infringement of Spectrum's rights and by means of Defendants' unfair competition with Spectrum.

6.     That Defendants be ordered to account for and disgorge to Spectrum all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

7.     That Spectrum be awarded an amount sufficient to reimburse Spectrum for the costs of corrective advertising.

8.     That Spectrum be awarded exemplary or punitive damages in an amount appropriate to punish Defendants and make them an example to the community.

9.     That Spectrum be awarded prejudgment interest on all damages.

10.    That the Court award Spectrum its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, New Jersey law, and any other applicable provisions of law.

11.    That the Court award Spectrum its costs of suit incurred herein.

12.    That the Court award such other and further relief as the Court may deem just and proper.

Dated: February 25, 2022

Attorneys for Plaintiffs

By:/s/ Rodman E. Honecker

WINDELS MARX LANE & MITTENDORF, LLP
Rodman E. Honecker
rhonecker@windelsmarx.com
120 Albany Street Plaza
New Brunswick, New Jersey 08901
Telephone: (732) 846-7600
Facsimile: (732) 846-8877

TUCKER ELLIS LLP
Steven E. Lauridsen (*pro hac vice* pending)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

## JURY DEMAND

Plaintiff demands a jury trial upon all issues so triable.

Dated: February 25, 2022

Attorneys for Plaintiffs

By:/s/ Rodman E. Honecker

WINDELS MARX LANE & MITTENDORF, LLP
Rodman E. Honecker
rhonecker@windelsmarx.com
120 Albany Street Plaza
New Brunswick, New Jersey 08901
Telephone: (732) 846-7600
Facsimile: (732) 846-8877

TUCKER ELLIS LLP
Steven E. Lauridsen (*pro hac vice* pending)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I hereby certify that the foregoing statements made by me are true. If any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 25, 2022

By: */s/ Rodman E. Honecker*

WINDELS MARX LANE & MITTENDORF, LLP
Rodman E. Honecker
rhonecker@windelsmarx.com
120 Albany Street Plaza
New Brunswick, New Jersey 08901
Telephone: (732) 846-7600
Facsimile: (732) 846-8877

TUCKER ELLIS LLP
Steven E. Lauridsen (*pro hac vice* pending)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

## F.R. CIV. P. RULE 7.1(a) DISCLOSUSRE

Plaintiffs aver that Spectrum Brands, Inc. is a wholly owned, indirect subsidiary of Spectrum Brands Holdings, Inc., a company that is publicly held.

Dated: February 25, 2022

By:*/s/ Rodman E. Honecker*

WINDELS MARX LANE & MITTENDORF, LLP
Rodman E. Honecker
rhonecker@windelsmarx.com
120 Albany Street Plaza
New Brunswick, New Jersey 08901
Telephone: (732) 846-7600
Facsimile: (732) 846-8877

TUCKER ELLIS LLP
Steven E. Lauridsen (*pro hac vice* pending)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409