**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPECTRUM BRANDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARROW MERCHANTS LLC, d/b/a BHNV GROUP, *et al.*, <br><br> Defendants. | Civil Action No. 22-992 (GC)(TJB) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

This matter comes before the Court upon Defendant Arrow Merchants LLC's ("Defendant"[1]) Motion to Dismiss Plaintiff Spectrum Brand Inc.'s ("Plaintiff") Complaint. (ECF No. 11.) Plaintiff opposed Defendant's Motion (ECF No. 14), and Defendant replied (ECF No. 15). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Defendant's Motion.

## I.    BACKGROUND[2]

Plaintiff "is a global consumer goods conglomerate" that "develops, manufactures, distributes, and sells high-quality residential home hardware and locksets[.]" (Compl. ¶ 13, ECF

---

[1] As Defendant Arrow Merchants LLC is doing business as BHNV Group, for purposes of this Opinion, references to "Defendant" refer to Arrow Merchants LLC and/or BHNV Group.

[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

No. 1.) Plaintiff sells its residential home hardware and locksets under the KWIKSET trademarks ("Plaintiff's Mark") and advertises its KWIKSET-branded products ("Plaintiff's Products") as "the leading residential lock[sets], making homeowners feel safe since 1946." (*Id.* ¶¶ 13, 16.) Plaintiff "owns the exclusive trademark rights to the distinctive [Plaintiff's Marks] with the mark[s] having been used in connection with door locks and related goods since at least as early as 1946[.]" (*Id.* ¶ 17.) Plaintiff's Products are intended to be sold through authorized wholesalers, security dealers, retailers, and resellers ("Authorized Sellers"), and are customarily sold with manufacturer warranties, access to Plaintiff's customer services, and other quality controls. (*Id.* ¶¶ 14-16.)

## A. **Plaintiff's Quality Control Measures**

In an effort to "protect its brand and its consumers," Plaintiff maintains a quality control program that applies to all of its Authorized Sellers. (*Id.* ¶ 25.) Some of the rules that Plaintiff's quality control program impose upon Authorized Sellers include: 1) "Authorized Sellers are . . . prohibited from selling products to unauthorized resellers[,]" 2) "Authorized Sellers [must] inspect all [Plaintiff's Products] for damage[,]" and 3) "Authorized Sellers [are prohibited] from relabeling, repackaging, or otherwise altering [Plaintiff's] Products[.]" (*Id.* ¶ 29.) Additionally, following the sale of Plaintiff's Products, Authorized Sellers are required to supply ongoing support to end-user consumers and are required to provide "high-level customer service by promptly responding to customer inquiries." (*See id.* ¶ 30.)

Plaintiff "imposes additional [quality control] requirements on its Authorized Sellers who sell online ('Authorized Online Sellers')." (*Id.* ¶ 31.) Specifically, "Authorized Online Sellers may only sell [Plaintiff's] Products on websites that [Plaintiff] has specifically approved." (*Id.* ¶ 33.) "Authorized Online Sellers are also prohibited from selling, without prior written consent of

[Plaintiff], [Plaintiff's] Products on unauthorized websites, such as third-party marketplaces like Amazon[.]"[3] (*Id.* ¶ 36.)

**B.    Defendant's Alleged Unlawful Activity**

While monitoring online listings of Plaintiff's Product, "Plaintiff discovered a high volume of products bearing [Plaintiff's Marks] being [] offered for sale by Defendant[] on Amazon[.]" (*Id.* ¶ 41.) Defendant was making these sales through an Amazon storefront named BHNV Group ('BHNV Storefront')." (*Id.*) Defendant is neither an Authorized Seller nor an Authorized Online Seller under contract with Plaintiff. (*Id.* ¶ 42.) As such, Defendant is not bound by Plaintiff's quality control requirements. (*See id.*) Defendant, not being bound by Plaintiff's quality control requirements, neither inspects Plaintiff's Product it sells for damage or defects to the same standard as Plaintiff nor does Defendant package and ship its products in a manner consistent with Plaintiff's rules. (*Id.* ¶ 52.) Moreover, Defendant, as an unauthorized seller, does not abide by Plaintiff's customer service requirements[4] or offer warranties to customers.[5] (*Id.* ¶¶ 43, 53.)

Plaintiff observed that "[c]ustomer reviews of BHNV's Storefront show that Defendant[] sold products through [] BHNV Storefront that were used, broken, defective, or otherwise of poor quality." (*Id.* ¶ 45.) Specifically, one customer complained about receiving "broken [and] crushed product[s]" and another customer complained that due to the poor quality of products received

---

[3] Plaintiff provides in its Complaint several other quality-control rules it sets forth for Authorized Online Sellers. (Compl. ¶ 38.) For example, Authorized Online Sellers must "be appropriately registered and recognized businesses that meet applicable criteria[,] . . . have an acceptable online review history without significant negative product or seller reviews[, and] implement a mechanism for soliciting customer feedback . . . taking appropriate steps to promptly address that feedback." (*Id.*)

[4] Plaintiff alleges that Defendant is "not qualified or trained to accurately describe, demonstrate, and sell" Plaintiff's Product and Defendant does "not take appropriate steps to address negative reviews from customers and do[es] not cooperate with [Plaintiff] in investigating negative product reviews." (Compl. ¶¶ 15, 43, 50.)

[5] Plaintiff alleges that it provides manufacturers' warranties for its products. (Compl. ¶ 15.)

from Defendant the customer will not "purchase [Plaintiff-marked products] again." (*Id.* ¶¶ 45, 50.) Notwithstanding these negative customer reviews, Defendant "sold, and continue[s] to sell unauthorized products bearing [Plaintiff's] Marks on BHNV[] Storefront." (*Id.* ¶ 48.)

On or about February 2, 2019, counsel for Plaintiff sent a cease-and-desist correspondence demanding that Defendant immediately cease selling Plaintiff's Products with Plaintiff's Mark because such sales were causing harm to Plaintiff's customers, Plaintiff, and Plaintiff's goodwill. (*Id.* ¶ 58.) Defendant did not respond to this correspondence and Defendant continued to offer for sale Plaintiff's Product bearing Plaintiff's Mark. (*Id.* ¶ 59.) On or about March 1, 2021, counsel for Plaintiff sent a second cease-and-desist correspondence to Defendant addressing the same concerns. (*Id.* ¶ 60.) Plaintiff again received no answer and Defendant continued to offer for sale Plaintiff's Products bearing Plaintiff's Mark. (*Id.* ¶ 61.) Plaintiff sent further follow-up correspondence on March 15, 2021 and March 31, 2021, but to no avail. (*Id.* ¶¶ 61-62.)

Accordingly, on February 25, 2022, Plaintiff filed this action alleging: 1) Trademark Infringement under 15 U.S.C. § 1114(1); 2) Trademark Infringement and False Designation of Origin under 15 U.S.C. § 1125(a); 3) New Jersey Unfair Competition under N.J. State. Ann. § 56:4-1, *et seq.*; 4) New Jersey Trademark Infringement under N.J. State. Ann. § 56:3-13.16; and 5) common law trademark and unfair competition. (*Id.* ¶¶ 73-107.) On April 5, 2022, Defendant filed the instant Motion to Dismiss. (ECF No. 11.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[6] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[6] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## III.  **DISCUSSION**

Defendant moves to dismiss all five Counts in Plaintiff's Complaint. Importantly, "[c]ourts in the Third Circuit consider claims for trademark infringement and for false designation of origin under an identical standard." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 n.6 (D.N.J. 2015) (citing *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). Moreover, "the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law[.]" *J&J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 358, 374 (D.N.J. 2002). The Court, therefore, need only consider whether Count I of Plaintiff's Complaint for trademark infringement under the Lanham Act can survive Defendant's Motion to Dismiss, because doing so resolves whether Counts II, III, IV, and V can survive.

To set forth a claim for trademark infringement under the Lanham Act, a plaintiff must adequately allege that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear*, 238 F.3d at 210. "A likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *Id.* at 211 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992)).

Typically, where a plaintiff's product has already been sold, by authorized sale, into the stream of commerce, the first sale doctrine applies to prevent an infringement action against a

defendant reseller.[7] *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998). A plaintiff, however, can circumvent the first sale doctrine where it can establish "that the products sold by the alleged infringer are not 'genuine.'" *Id.* at 302 (citations omitted). "The test for whether an alleged infringer's products are genuine asks whether there are 'material differences' between the products sold by the trademark owner and those sold by the alleged infringer."[8] *Id.* at 302-03; *see also Rockwell Automation, Inc. v. Radwell lnt'l, Inc.*, No. 15-5246, 2019 WL 7288946, at *6-8 (D.N.J. Dec. 30, 2019) (providing a comprehensive overview of jurisprudence in the Third Circuit surrounding the "first sale" doctrine and the "material differences" exception to the doctrine and concluding that the "material differences" exception "persists" in this Circuit).

"The purpose of the material difference test is to determine whether the allegedly infringing products are likely to injure the goodwill developed by the trademark owner in the trademarked goods." *Iberia Foods*, 150 F.3d at 303 (citing *Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659,

---

[7] This doctrine is also referred to as the "exhaustion doctrine" because the rule maintains that the owner of a trademark exhausts its rights to maintain control over who buys, sells, and uses the product after the "first sale." *Hotaling & Co. v. Berry Sols. Inc.*, No. 20-18718, 2022 WL 4550145, at *7 (D.N.J. Sept. 29, 2022) (quoting *Iberia Foods*, 150 F.3d at 301).

[8] If a plaintiff can plead that a defendant infringer's products are not genuine, the plaintiff effectively meets the "likeliness of confusion" element under 15 U.S.C. § 1114. *See Iberia Foods*, 150 F.3d at 302. This is because where a defendant is being accused of infringement for reselling a plaintiff's product, a likelihood of confusion will only occur if the unauthorized resale products are materially different from a plaintiff's product. Consequently, when a court is assessing the "likelihood of confusion" factor of a trademark infringement claim in the unauthorized, "materially different" resale context, a court should not conduct its "likelihood of confusion" analysis using the *Lapp* factors, but rather should employ a genuineness analysis to determine if defendant's product became "materially different" from plaintiff's product upon resale, thus rendering the defendant's product likely to confuse consumers. *Compare Cambridge Pavers, Inc. v. EP Henry Corp.*, 407 F. Supp. 3d 503, 507 (D.N.J. 2019) (assessing a motion to dismiss and conducting a likelihood of confusion analysis using the *Lapp* factors where plaintiff's mark "ArmorTec" differed but was arguably similar to defendant's mark "ColorTech"), *with Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, No. 15-5246, 2016 WL 7018531, at *3-4 (D.N.J. Nov. 30, 2016) (denying a motion to dismiss in the unauthorized resale goods context and declining to employ the *Lapp* factors when assessing likelihood of confusion where both plaintiff and defendant sold plaintiff's products to consumers, just with allegedly materially different warranties or quality controls).

671-73 (3d Cir. 1989)). "Because consumer preferences are as fickle and diverse as the human imagination, it is impossible to devise an exhaustive list of the types of differences between products that can be considered material for the purposes of the genuineness test." *Id.* at 304. That said, courts have found that material differences can include, for example, differences in quality control, warranties, conditions of products or packaging, and quality of customer service. *Id.* at 304 (stating a mark "owner's rigorous quality control and inspection procedure on receipt from the manufacturer has often been recognized as the basis of a material difference between products sold by the trademark owner and those offered by another company without the trademark owner's stamp of approval" (citations omitted)); *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009) (holding "material differences may include warranties and service commitments"); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246 (2d Cir. 2009) (finding differences in the quality of packaging can sometimes constitute a material difference); *see also Rockwell*, 2019 WL 7288946, at *3-4, 8, 9 (denying defendant's motion for summary judgment where plaintiff argued that the "material differences" exception applied to overcome the first sale doctrine and where plaintiff argued that the material differences between defendant's and plaintiff's goods were that the defendant sold plaintiff's goods without being authorized and without "warranties of quality, safety, and customer service that [plaintiff] required of its authorized distributors").

Here, Plaintiff has successfully pled factual allegations capable of stating a plausible trademark infringement claim.[9] First, Plaintiff pleads that it owns valid and legally protected marks. Specifically, Plaintiff alleges that it "owns the exclusive trademark rights to [Plaintiff's

---

[9] As the Court mentioned above, all five Counts in Plaintiff's Complaint share elements with Count I, Plaintiff's trademark infringement claim. Plaintiff's factual allegations as to Count I state, therefore, a plausible claim for relief for all five Counts.

Mark]," and provides a list of registrations for Plaintiff's Mark, all of which Plaintiff avers are "incontestable under 15 U.S.C. § 1056." (Compl. ¶¶ 17, 21.) As such, Plaintiff has successfully pled that it (1) has a valid and legally protectable mark and (2) owns the mark.

Second, Plaintiff pleads sufficient facts to plausibly claim that there are material differences between Plaintiff's Products and Defendant's products, causing a likelihood of confusion. Specifically, Plaintiff alleges that material differences in quality control, customer service, and warranties cause a likelihood of confusion capable of damaging Plaintiff's goodwill with its customers.

Plaintiff provides a list of quality controls that it alleges it imposes upon its Authorized Online Sellers.[10] (Compl. ¶ 38.) Plaintiff alleges that Defendant, being an unauthorized seller, does not maintain these quality controls.[11] (*Id.* ¶¶ 41, 42.). Plaintiff next alleges that Defendant does not comport with Plaintiff's customer service requirements because Defendant is "not qualified or trained to accurately describe, demonstrate, and sell" Plaintiff's Products. (*Id.* ¶ 53.) In addition, Defendant does "not take appropriate steps to address negative reviews from customers and do[es] not cooperate with [Plaintiff] in investigating negative product reviews." (*Id.*) Finally, Plaintiff alleges that all of its products "are sold with manufacturers' warranties," but that Defendant's products are sold "without warranties." (*Id.* ¶¶ 15, 43.) The Court infers from these allegations that material differences in Defendant's quality control, customer service, and

---

[10] These controls include requiring Authorized Online Sellers to be "registered and recognized businesses that meet applicable criteria, . . . have an acceptable online review history," and "implement a mechanism for soliciting customer feedback." (Compl. ¶ 38.)

[11] In factually substantiating this claim, Plaintiff provides examples of negative Defendant product reviews from Amazon.com where customers claim to have received "broken [and] crushed product[s]" from Defendant and claim they will not "purchase [Plaintiff-marked products] again." (Compl. ¶¶ 45, 50.) Plaintiff's Complaint suggests that these negative reviews are the result of Defendant's failures in quality control. (*See id.* ¶ 53.)

warranty inclusion threaten to damage Plaintiff's goodwill with its customers. Such inferences are capable of sustaining a claim that Defendant's products are not "genuine" because they are materially different from Plaintiff's Products. *See Iberia Foods*, 150 F.3d at 303 (stating a mark "owner's rigorous quality control and inspection procedure on receipt from the manufacturer has often been recognized as the basis of a material difference between products sold by the trademark owner and those offered by another company without the trademark owner's stamp of approval" (citations omitted)); *Beltronics USA*, 562 F.3d at 1073 (holding "material differences may include warranties and service commitments").

In sum, Plaintiff states a facially plausible trademark infringement claim for relief against Defendant.[12] Namely, Plaintiff provides facts alleging that Defendant infringed upon its trademark where it sold products bearing Plaintiff's Mark into the stream of commerce in a materially different state than that in which Plaintiff's Products are typically sold. Under Third Circuit precedent, the Complaint's allegations are sufficient to state a claim. *Rockwell Automation, Inc.*, 2019 WL 7288946, at *6-9 (analyzing the "first sale" doctrine and the "material differences"

---

[12] Defendant's main argument for why the Court should grant its Motion to Dismiss is that Plaintiff's material differences allegations are conclusory. (Def.'s Moving Br. at 9-11.) Specifically, Defendant maintains that Plaintiff's argument that Defendant's failure to include warranties alongside its products is a material difference fails because the Complaint fails "to provide sufficient facts in support of these statements, e.g., what 'warranties' are supposedly not provided and why [would] consumers [] consider these 'warranties' significant." (*Id.* at 7.) Defendant makes similar arguments for why Plaintiff's averments as to why Defendant's customer service and quality control measures were materially different. (*Id.* at 8-10.) Importantly, however, these arguments are not persuasive because the Rule 8(a)(2) pleading standard requires only a "'a short plain statement of the claim showing that the pleader is entitled to relief, in order to' give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) does not, however, require a plaintiff to provide multiple layers of factual specificity or elaborate on its well-pleaded factual allegations. Plaintiff's allegations that Defendant did not provide customers with warranties, did not properly package materials as evidenced by several customer reviews, and did not provide Plaintiff's quality customer service as inferred from Defendant's unauthorized seller status are all sufficient factual allegations to survive the pleading stage.

exception to the doctrine and concluding that the "material differences" exception "persists" in this Circuit).

## IV.    **CONCLUSION**

For the reasons stated above, the Court denies Defendant's Motion to Dismiss.


**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**